IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**HOWARD HAYS**                                                                                **PLAINTIFF**

v.                                                                                                             **No. 4:15CV51-NBB-DAS**

**SGT. DETECTIVE BYRON
GRANDERSON, ET AL.**                                                              **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Howard Hays, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants falsely arrested him, maliciously prosecuted him, and caused an unreasonable delay between the time of his arrest and his initial appearance before a neutral and detached magistrate. The defendants have moved for summary judgment; Mr. Hays has responded to the motion, and the defendants have replied. The matter is ripe for resolution. For the reasons set forth below, the motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075

(5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**Undisputed Material Facts**

The court has taken the chronology of events, which the plaintiff has not disputed, largely from the defendants' brief in support of summary judgment. In his "Statement of Disputed Factual Issues," Mr. Hays sets forth five items he believes created genuine issues of material fact. In numbers 1, 2, 4, and 5, Hays disputes whether Detective Granderson actually believes various facts set forth in his affidavit in support of summary judgment. Hays did not, however, present any evidence contradicting those statements, and as set forth above, his unsupported allegations are insufficient to create a genuine issue of material fact. In number 3, Mr. Hays challenges whether he actually told Detective Granderson that he was on parole on the day of his arrest. However, Granderson *somehow* discovered that fact, as he notified the Mississippi Department of Corrections, which issued a parole warrant on the first business day after Hays' arrest. Further, as discussed below, Hays' status as a parolee changes the calculus from the 48-hour burden-shifting standard of *Gerstein* and *McLaughlin*[1] (which applies to normal suspects) to the much lower bar of "as promptly as convenient" after arrest (for parolees suspected of violating the terms of their conditional release). *Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972). In addition, Detective

---

[1] *Gerstein v. Pugh*, 420 U.S. 103, 125, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

Granderson enjoys qualified immunity from suit because the law as applied the unusual facts of this case is not well-established. Thus, Mr. Hays' allegation regarding the revelation of his status as a parolee (and the timing of that revelation) is not material to the outcome of this case.

**Mr. Hays Released from Incarceration**

On August 11, 2014, the plaintiff, Howards Hays, was released on parole from the custody of the Mississippi Department of Corrections for his conviction for burglary.

**Burglary at 401 Walthall Street, September 25, 2016**

On September 25, 2016, Greenwood, Mississippi Detective Granderson was dispatched to 401 Walthall Street in Greenwood, Mississippi, to investigate a burglary at the Bella Flora Flower Shop. Among the items stolen were various merchandise and a 1997 Chevrolet Astro Van. Detective Granderson dusted for fingerprints and photographed shoe prints on top of an air conditioning unit. The Greenwood Police Department conducted the investigation for the crimes of Burglary of a Vehicle and Commercial Burglary. *See* Miss. Code §§ 97-17-43; 97-17-33.

**Detective Granderson Finds the Stolen Van at 1:20 a.m., September 26, 2016**

At approximately 1:20 a.m. on Friday, September 26, 2016, Detective Granderson noticed a van matching the description of the stolen 1997 Chevrolet Astro stolen the previous day from Bella Flora Flower Shop in the parking lot of a business along Mississippi Highway 7. Detective Granderson called in the license plate number on the van and confirmed that it was stolen. Detective Granderson approached the vehicle, at which point he observed a black male seated in the driver's side of the van. He asked the man in the driver's seat, whom he now considered a suspect, what he was doing in the van, and then placed him in handcuffs to call the Leflore County Sheriff's Department. A deputy from the Leflore County Sheriff's Department then transported the man, identified as Howard Hays, to the Leflore County Jail. At the time of Mr. Hays' booking, booking

records indicate the Leflore County Sheriff's Department had placed an investigative hold on him. Thus, Mr. Hays was arrested for another crime forty-six days after his release on parole.

### Hays Admits to the Burglaries at 6:30 p.m. on September 26, 2014

Around 6:30 p.m. Detective Granderson went to the Leflore County Jail to question Hays. He obtained a signed waiver from Hays, who waived his rights under *Miranda v. Arizona* to decline to answer questions and to speak with an attorney prior to being interrogated. Hays later confessed to stealing the van and numerous items from the flower shop. Notably, he also told Detective Granderson that he was currently on parole. Detective Granderson informed MDOC that evening on the belief that the agency would want Hays to be held to determine whether his parole would be revoked. Detective Granderson also prepared affidavits and obtained the signature of a police court clerk on September 26.

### The Mississippi Department of Corrections Issues a Parolee Warrant for Hays on September 29, 2014.

As Detective Granderson had informed MDOC of Hays's arrest on Friday night, MDOC responded on September 29, 2014, by issuing a "Warrant for Arrest of Paroled Prisoner," which directed that Hays be arrested, and, thus formed the basis for his continued detention at the Leflore County Jail. As a result, on September 29, 2014, Hays was detained based upon the MDOC's conclusion that he may have violated his parole. At that point, Detective Granderson believed that Hays could not be released, whether he obtained a judicial determination of probable cause for his arrest or not.

### Warrants Are Obtained on October 6, 2014, and March 30, 2015

As of September 29, Detective Granderson believed that MDOC's warrant and the hold it placed on Hays meant that Hays could not be released. On October 6, 2014, Carlos Palmer, Greenwood Municipal Judge, issued a warrant for Hays' arrest. The basis of the warrant was an

affidavit of probable cause prepared and sworn to the police court clerk on September 26, 2014. Additional warrants issued on March 30, 2015. The purpose of obtaining those warrants was to ensure that, following Hays's return from serving a term of incarceration for the revocation of his parole, he would be returned to custody to face the charges for which he was arrested.

**Hays Serves His Parole Revocation from October 6, 2014,
Through April 4, 2015 at the Technical Violation Center**

Hays's parole was revoked by MDOC on October 6, 2014, and he served a 180-day term of incarceration at the Technical Violation Center. Upon his release on April 4, 2015, he was returned to the Leflore County Jail to face the charges for which Officer Granderson arrested him on September 26, 2014, and for which warrants had issued on October 6, 2014, and March 30, 2015.

**Hays Is Indicted and Pleads Guilty to Commercial Burglary and Grand Larceny**

On June 4, 2015, the Leflore County Grand Jury returned an indictment charging Hays with Commercial Burglary and Grand Larceny for the burglary of the flower shop and theft of the van. *See* Miss. Code §§91-17-33(1) and 97-17-42(1). Hays entered a plea of guilty and was sentenced on October 12, 2015. Court records indicate that Hays was represented by counsel during the course of his criminal proceedings.

**Discussion**

In this case, Howard Hays alleges that the defendants falsely arrested him, maliciously prosecuted him, and failed to obtain a prompt judicial determination of probable cause to arrest him. In addition, he alleges that he was denied the right to counsel during his detention. As set forth below, none of these allegations has merit.

**City of Greenwood Police Department Is Not a Proper Defendant**

An entity's capacity to be sued must be determined by reference to the law of the state in which the district court sits. Fed.R.Civ.P. 17(b). In Mississippi, "sheriff's departments are not

political subdivisions within the meaning of the MTCA. Thus, the Sheriff's Department does not enjoy a separate legal existence, apart from [the county in which it is located]." *Brown v. Thompson,* 927 So.2d 733 (Miss. 2006). Similarly, Mississippi jails and prisons are not amenable to civil suit. *Campbell v. Thompson*, 2015 WL 5772535 (S.D. Miss.), *Simmons v. Harrison County Sheriff's Dept.*, 2015 WL 4742381 (S.D. Miss.) Likewise, a municipal police department does not constitute a political subdivision of the city in which it is situated and is thus not amendable to civil suit. *City of Jackson v. Harris*, 44 So.3d 927, 928 (Miss. 2010) (police department merely part of city). Thus, the City of Greenwood Police Department must be dismissed with prejudice from this case.

### No Policy of Custom of City of Greenwood to Support Liability Under 42 U.S.C. § 1983

To establish municipal liability under § 1983, a plaintiff must demonstrate that an official municipal policy or custom caused the constitutional violation alleged. *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995). The plaintiff has alleged no facts to show that any policy-making officials for the City implemented an official policy that caused the alleged constitutional violation; nor has he established a persistent pattern of conduct by city officials that caused the alleged violation. In a § 1983 action, liability may not be imposed upon a governmental entity on a theory of *respondeat superior* for the actions of non-policy making government employees. *Monell*, 436 U.S. at 690-94; *see Doe v. Rains County Independent School District*, 66 F.3d 1402, 1409 (5th Cir. 1995); *Brown v. Bryan County, Texas*, 53 F.3d 1410, 1418 (5th Cir. 1995); *Wilson v. Barrientos*, 926 F.2d 480 (5th Cir. 1991). For these reasons, the City of Greenwood must be dismissed with prejudice from this case.

### Malicious Prosecution Is Not a Claim Under 42 U.S.C. § 1983

The Fifth Circuit Court of Appeals has made clear that the tort of malicious prosecution is not, of itself, cognizable as a claim under 42 U.S.C. § 1983:

> [W]e conclude that no … freestanding constitutional right to be free from malicious prosecution exists.
>
> …
>
> Despite frequent use of the term "malicious prosecution" to describe a wide range of events attending a filing of criminal charges and even continuing through trials, the tort of malicious prosecution has a relatively narrow and widely accepted definition.
>
>> The tort of malicious prosecution of criminal proceedings occurs when one citizen initiates or procures the initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause therefor, if the proceedings terminate favorably for the person thus prosecuted.
>
> It signifies that initiation of charges without probable cause lies at the heart of this definition, one that is deployed by state courts throughout the country . . . .

*Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (internal citations omitted). Thus, to the extent that Mr. Hays seeks § 1983 relief for the tort of malicious prosecution, no such federal claim exists.

Even if malicious prosecution were a federal claim, Hays' allegations do not meet its elements. In Mississippi, the elements of malicious prosecution are:

(1) the institution or continuation of original judicial proceedings, either criminal or civil;

(2) by, or at the insistence of the defendants;

(3) the termination of such proceeding in plaintiff's favor;

(4) malice in instituting the proceeding;

(5) want of probable cause for the proceedings; and

(6) the suffering of damages as a result of the action or prosecution.

*Strong v. Nicholson*, 580 So.2d 1288, 1293 (Miss. 1991). Mr. Hays' claim regarding malicious prosecution fails for at least three reasons: (1) the proceedings did not terminate in his favor (he pled guilty); (2) there was ample probable cause to arrest him (he sat in the driver's seat of a stolen van

hours after it was stolen); and (3) he has not alleged that the defendants acted with malice. This claim is without substantive merit and will be dismissed.

### False Imprisonment/Delay in Judicial Finding of Probable Cause

Mr. Hays' allegations of false imprisonment and failure to timely present him to a court for a judicial determination of probable cause are essentially the same claim. There was ample probable cause to arrest him, as he was found sitting in the driver's seat of a stolen vehicle, and when asked what he was doing in the vehicle, he responded only that he did not "have anything to do with [the] vehicle." As defendant Granderson had probable cause to arrest Hays, his arrest and detention immediately afterward was proper.

The question before the court is whether that continued detention later ran afoul of the Fourth Amendment because an unreasonable amount of time elapsed between the valid arrest and a judicial determination of probable cause. The Supreme Court explained that "[t]he tort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process.*" *Wallace v. Kato,* 549 U.S. 384, 389, 127 S.Ct. 1091, 1095–96, 166 L.Ed.2d 973 (2007) (original emphasis). Hence, as "false imprisonment consists of detention without legal process, false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* In the Fifth Circuit,

> once 'facts supporting an arrest are placed before an independent intermediary such as a ... grand jury, the intermediary's decision breaks the chain of causation' for constitutional violations such as false arrest and false imprisonment. But, the chain of causation is not broken when "the deliberations of that intermediary were in some way tainted by the actions of the defendant[.]"

*Taylor v. Gregg,* 36 F.3d 453, 456 (5th Cir.1994) (internal citations omitted), *overruled on other grounds by Castellano v. Fragozo,* 352 F.3d 939, 949 (5th Cir. 2003)).

In this case, once the Mississippi Department of Corrections issued the parole violation warrant, signed by Field Officer Chandra Bonner on September 29, 2014, Mr. Hays was in

custody for multiple violations of the terms of his parole (arrest on new charges, failure to make payments on supervision fees and criminal judgments, and failure to seek employment). Under Mississippi law, Parole Field Officers are permitted to issue arrest warrants for parole violations, Miss. Code Ann. § 47-7-27, and under federal law, parolees do not enjoy the protections of the Oath or Affirmation Clause of the Fourth Amendment. *United States v. Garcia-Avalino*, 444 F.3d 444, 447 (5th Cir. 2006). Hence, officials need not procure a sworn statement to arrest a parolee for a violation of supervised release. Thus, beginning on September 29, 2014, Mr. Hays' detention was proper, as it was based upon the valid parole violation warrant – and later a judicial finding that he violated parole. For this reason, the court must limit its inquiry to the period between Mr. Hays' arrest at 1:20 a.m. on September 26, 2014, and the date the parole violation warrant issued (September 29, 2014).

The Fourth Amendment requires a fair determination of probable cause to be made "promptly after arrest." *Gerstein v. Pugh*, 420 U.S. 103, 125, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The Supreme Court expounded upon Fourth Amendment requirements in *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). These cases created the framework for analyzing claims regarding the timeliness of obtaining a probable cause determination. "Judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id.*; see also *Powell v. Nevada*, 511 U.S. 79, 83, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994). Nonetheless, delays less than 48 hours also can violate an arrestee's rights if they are "unreasonable," for example, "for the purpose of gathering additional evidence *to justify the arrest*, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *McLaughlin*, 500 U.S. at 56, 111 S.Ct. 1661 (emphasis added). The Court created a presumption that any probable cause determination before the 48–hour mark is reasonable, and the burden of showing otherwise falls

to the person arrested. *Id.* In deciding this issue, "courts must allow a substantial degree of flexibility." *Id.* Beyond 48 hours, "the calculus changes." *Id*. at 57, 111 S.Ct. 1661. In that situation, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.*

Using this analysis, Detective Byron Granderson did not violate Mr. Hays' Fourth Amendment rights. Upon booking Mr. Hays at the station in the wee hours of the morning of Friday, September 26, 2014, Detective Granderson noticed that another agency (Leflore County, Mississippi) had placed an "investigative hold" on Hays. Detective Granderson's interview took place that same day, a Friday, at about 6:31 p.m., during which Mr. Hays signed a *Miranda* waiver and confessed to both burglary grand larceny. By the time the interview concluded about ten minutes later, the local court had closed for the week, and no judge was available to conduct a probable cause hearing.

At some point during that day (or at least between that day and Monday, when the MDOC parole warrant issued), Detective Granderson discovered that Hays was currently on parole, and, as courts and law enforcement officers know, arrest for new crimes is always a violation of the terms parole. Further, parolees do not enjoy the "full panoply" of constitutional protections that their fellow citizens do. *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972). Granderson clearly acted on the knowledge, however obtained, that Hays was on parole – and informed the Mississippi Department of Corrections.

The court could find no authority regarding the deadline for presenting a parolee to a neutral and detached magistrate after an arrest for a new offense by someone other than his parole officer. However, generally, the State must present a parolee for a probable cause

determination regarding a parole violation "as promptly as convenient" after arrest at a place near the alleged violation:

> [D]ue process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and *as promptly as convenient after arrest* while information is fresh and sources are available. Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions.

*Id.* at 485 (emphasis added, internal citations omitted). The official making the probable cause determination

> need not be a judicial officer. The granting and revocation of parole are matters traditionally handled by administrative officers. In Goldberg, the Court pointedly did not require that the hearing on termination of benefits be conducted by a judicial officer or even before the traditional 'neutral and detached' officer; it required only that the hearing be conducted by some person other than one initially dealing with the case. It will be sufficient, therefore, in the parole revocation context, if an evaluation of whether reasonable cause exists to believe that conditions of parole have been violated is made by someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation. A State could certainly choose some other independent decisionmaker to perform this preliminary function.

*Id.* at 486.

In this case, Mr. Hays' Parole Officer, Chandra Bonner, was not involved in his arrest for new crimes – and was thus sufficiently detached from the situation to make an initial determination of probable cause to arrest him – not for the new crimes, but for the violation of the conditions of his release. The court notes that Officer Bonner had reasons independent from Hays' arrest to determine that he had violated his parole conditions (non-payment of fees and failure to seek employment upon release).

Mr. Hays attended a preliminary hearing on September 30, 2014 (a day after the MDOC Parole Warrant issued) – and attached the report of that hearing to his response to the defendants' motion for summary judgment. Hays characterizes the initial appearance as "frivolous," but does not dispute that the hearing took place. He argues that the judge did not inform him of his

- 13 -

right to counsel or the charges against him; however, those were set forth in the Notice of Preliminary Hearing Date, Time, and Place. In addition, Mr. Hays had executed a *Miranda* waiver, relinquishing his right to remain silent and to an attorney to be present during questioning. In any event, parolees are not entitled to representation by counsel at a preliminary revocation hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), *United States v. Ramirez-Perez*, 132 Fed. Appx. 558 (5th Cir. 2005), 59 Am. Jur. 2d Pardon and Parole § 137. Hays also acknowledged that he was not under pressure or coercion of any kind. He spoke at length with Detective Granderson about burglarizing the flower shop and stealing the van, the crimes to which he later pled guilty.

The preliminary hearing established probable cause to detain Mr. Hays for burglary and grand larceny. Clearly, a finding of probable cause to detain him for the burglary and grand larceny also established probable cause that he violated the terms of his parole or probation by committing new crimes. Thus, on approximately October 6, 2014, Mr. Hays was transported to the Technical Violation Center to serve a 180 term for violation of parole conditions, which he completed on April 4, 2015.

The parole warrant issued on the third day after Hays' arrest, which the court finds to be a reasonable delay; certainly it was as "as promptly as convenient" after the arrest. It was reasonable for the detective to believe that the Mississippi Department of Corrections would issue a warrant to detain Hays upon learning of his arrest. Indeed, that is what happened – on September 29, 2014, the first business day after Detective Granderson interviewed Hays. From that point forward, Mr. Hays was in custody under the authority of the valid parole warrant, and Detective Granderson was not authorized to release him. Indeed, had Detective Granderson

released Mr. Hays as to his arrest for burglary and grand larceny prior to issuance of the parole warrant, he would have had the duty to immediately re-arrest him once the warrant issued.

The purpose of the framework established in *Gerstein* and *McLaughlin* is to prevent the lengthy detention of someone merely suspected of a crime for an undue amount of time before a neutral party can determine if there is sufficient justification for his continued detention or the setting of bond. In this case, Mr. Hays was on parole; as such, the standard for his continued detention was lower than that of an ordinary citizen. Put another way, the fact that Mr. Hays was on parole at the time of his arrest constituted "an extraordinary circumstance" under *McLaughlin, supra*, as it lowered the standard for his continued detention to one merely of convenience for law enforcement or corrections officers. Thus, Hays' detention until the third day after his arrest did not violate his rights under the Fourth Amendment.

### Detective Granderson Enjoys Qualified Immunity

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir.2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a

clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836-37.

As set forth above, the law governing the present factual scenario is murky. There is little, if any, authority setting forth the applicability of *Gerstein* and *McLaughlin* on a parolee arrested for a new crime by someone other than his parole officer. As parolees have more limited rights regarding arrest and detention than ordinary citizens, it appears that the law would permit a lengthier delay in determining probable cause for a parole violation. Detective Granderson clearly sensed this, though had difficulty articulating it. The "investigative holds" by the Leflore County Sheriff's Department (a separate law enforcement agency) muddied the waters further. Though the Fifth Circuit has found that an "investigative hold" as applied in some scenarios does not constitute grounds to extend the deadline for obtaining a judicial determination of probable cause, the nature of the holds in the present case is unclear. *Sanders v. City of Houston*, 543 F. Supp. 694, 703 (S.D. Tex. 1982), *aff'd,* 741 F.2d 1379 (5th Cir. 1984) (pre-*Gerstein* case in which police department policy of arresting suspects without probable cause and detaining them for at least 72 hours without probable cause determination violates Fourth Amendment).

Further, in the present case, a judicial determination of probable cause as to the new crimes would simultaneously establish probable cause as to parole violation. Finally, Mr. Hays has not established that Detective Granderson delayed a probable cause finding for a nefarious purpose. As Mr. Hays concedes in his response to the instant motion, Granderson had ample probable cause to support the initial arrest, and Hays readily waived his rights and confessed the crimes that day. Thus, Detective Granderson had no need to cast about for additional evidence to establish probable cause to support the arrest. Hays has not alleged that Granderson held a grudge against him, and the small

delay arose from the unavailability of a judicial officer to conduct a probable cause hearing over the weekend – and from awaiting the near certain issuance of a warrant from MDOC regarding a parole violation. Once Hays was properly detained for violating the terms of his parole (rather than on suspicion of burglary and grand larceny), Detective Granderson was under no time pressure to seek a probable cause determination as to the new crimes. He is shielded by qualified immunity.

## Conclusion

For the reasons set forth above, Mr. Hays' claims regarding arrest without probable cause, malicious prosecution, untimely judicial determination of probable cause, and denial of right to counsel are without merit. Further, as to the claim regarding the timeliness of a probable cause hearing, defendant Granderson enjoys qualified immunity. For these reasons, The motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects.

**SO ORDERED**, this, the 17th day of August, 2017.

/s/ Neal Biggers  
NEAL B. BIGGERS  
SENIOR U. S. DISTRICT JUDGE